(August 1, 1922.)

## MAMIE R. RUSSELL, Respondent, v. NEW YORK LIFE INSURANCE COMPANY, a Corporation, Appellant.

[209 Pac. 273.]

LIFE INSURANCE — APPLICATION — REPRESENTATIONS — WARRANTIES — FALSE ANSWERS.

    1. All statements made in an application for life insurance, except in case of fraud, are representations and not warranties. (C. S. 5037.)

    2. Statements in such application that are not in fact material to the risk cannot be made material by agreement of the insured and the insurer.

    3. False answers in an application for life insurance, if made in good faith, will not avoid the policy unless they have misled the insurer to its injury.

APPEAL from the District court of the Second Judicial District, for Latah County. Hon. E. C. Steele, Judge.

Action by plaintiff as beneficiary under life insurance contract. Judgment for plaintiff. *Affirmed.*

J. H. Forney, for Appellant.

The agreement stated in the application binds the parties as to the materiality of the answers. (*Jeffries v. Economical Mutual Life Ins. Co.*, 22 Wall. (U. S.) 47, 22 L. ed. 833; *Harris v. New York Life Ins. Co.*, 86 W. Va. 638, 104 S. E. 121; *McEwen v. New York Life Ins. Co.*, 42 Cal. App. 133, 183 Pac. 373.)

Irrespective of the express agreement of the insured, his representations were material, since they were the subject of specific inquiry by the company. (*Campbell v.*

Publisher's Note.

  1. Validity of statute providing that immaterial false warranty shall not avoid insurance contract, see note in 7 Ann. Cas. 1107.

*New England Mutual Life Ins. Co.*, 98 Mass. 381, 402; *Miller v. Mutual Benefit Life Ins. Co.*, 31 Iowa 216, 7 Am. Rep. 122.)

Statements as to consultations of or attendance by physicians are material to the risk, and if false avoid the policy to the same extent as if they had been express warranties. (*German Life Ins. Co. v. Klein*, 25 Colo. App. 326, 137 Pac. 73; *Mutual Life Ins. Co. v. Hurni Packing Co.*, 260 Fed. 641, 171 C. C. A. 405; *Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co.*, 72 Fed. 413, 19 C. C. A. 286, 38 L. R. A. 33, 70; *Modern Woodmen of America v. Van Wald*, 6 Kan. App. 231, 49 Pac. 782; *Nelson v. Nederland Life Ins. Co.*, 110 Iowa, 600, 81 N. W. 807.)

Being both false and material, the insured's representations avoid the policy whether he intended to mislead the company or not. (*Mutual Life Ins. Co. v. Hilton-Green*, 241 U. S. 613, 36 Sup. Ct. 676, 60 L. ed. 1202; *Claflin v. Commonwealth Ins. Co.*, 110 U. S. 81, 3 Sup. Ct. 507, 28 L. ed. 76; *Mutual Life Ins. Co. v. Hurni Packing Co.*, 260 Fed. 641, 171 C. C. A. 405; *Whitney v. West Coast Life Ins. Co.*, 177 Cal. 74, 169 Pac. 997; *Schas v. Equitable Life Ins. Co.*, 116 N. C. 55, 81 S. E. 1014.)

"In cases where the misrepresentation is positive and of a fact actually material, it is not necessary to prove that the representation was fraudulently made." (Joyce on Insurance, sec. 1897; *New York Life Ins. Co. v. Fletcher*, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. ed. 934; *Cobb v. Covenant Mut. Ben. Assn.*, 153 Mass. 176, 25 Am. St. 619, 26 N. E. 230, 10 L. R. A. 666; *Providence Savings Life Assur. Co. v. Dees*, 120 Ky. 285, 86 S. W. 522; *Bankers' Life Ins. Co. v. Miller*, 100 Md. 1, 59 Atl. 116; *Campbell v. New England Mut. Life Ins. Co.*, 98 Mass. 381; *Sparer v. Travelers' Ins. Co.*, 185 App. Div. 861, 173 N. Y. Supp. 673; *Alexander v. Metropolitan Life Ins. Co.*, 150 N. C. 536, 64 S. E. 432; *United Brethern Mut. Aid Society v. O'Hara*, 120 Pa. St. 256, 13 Atl. 932; *Mutual Life Ins. Co. v. Arhelger*, 4 Ariz. 271, 36 Pac. 895; 1 May on Insurance, 4th ed.,

p. 365; 3 Cooley's Briefs on Insurance, p. 1932; Vance on Insurance, p. 267; 25 Cyc. 801.)

The Idaho statute changes the rule of the common law only in cases where a warranty of immaterial statements is sought to be relied on as avoiding the policy. But that is not this case. (*Sparer v. Travelers' Ins. Co., supra; Rakov v. Bankers' Life Ins. Co.,* 164 App. Div. 645, 150 N. Y. Supp. 55; *Kasprzyk v. Metropolitan Life Ins. Co.,* 79 Misc. Rep. 263, 140 N. Y. Supp. 211.)

Fred E. Butler, for Respondent.

A false representation will not avoid the policy unless it amounts to fraud or unless it is material to the risk. (2 Cooley's Briefs on Ins., p. 1154 et seq.) A provision in the contract of insurance making all statements in the application for insurance material to the risk is in contravention of sec. 5037, C. S., and void. (Joyce on Ins., sec. 1916; *Fidelity Mutual Life Assn. v. Ficklin,* 74 Md. 172, 21 Atl. 680, 23 Atl. 197; *Union Central Life Ins. Co. v. Pollard,* 94 Va. 146, 64 Am. St. 715, 26 S. E. 421, 36 L. R. A. 271; *Southland Life Ins. Co. v. Hopkins* (Tex. Civ.), 219 S. W. 254; *Fidelity Mutual Ins. Assn. of Philadelphia v. Miller,* 92 Fed. 63, 34 C. C. A. 211; *Mutual Life Ins. Co.. v. Dingley,* 100 Fed. 408, 40 C. C. A. 459; *Fidelity Mutual Life Assn. v. McDaniel,* 25 Ind. App. 608, 57 N. E. 645; *Mutual Life Ins. Co. v. Robinson,* 115 Md. 408, 80 Atl. 1085; *Hartford Life Ins. Co. v. Stallings,* 110 Tenn. 1, 72 S. W. 960.)

DUNN, J.—This action was brought by respondent to recover $3,000 alleged to be due by reason of a policy written by appellant May 16, 1916, on the life of the husband of respondent. The insured was killed by an automobile April 3, 1917. Appellant resists the action on the ground that the insured made material misrepresentations to the insurer in his written application, which is a part of the contract of insurance. The particular misrepresen-

tations claimed by appellant rest upon the following questions and answers:

"8.   Have you ever suffered from any ailment or disease. of
    "A.   The brain or nervous system?  No. . . . .
    "C.   The stomach or intestines, liver, kidneys or bladder?  No. . . . .
    "H.   Have you consulted a physician for any ailment or disease not included in your above answers? No.
"9.   What physician or physicians, if any, not named above have you consulted or been treated by, within the last five years and for what illness or ailment? None."

It is claimed by appellant that these several answers were false and at the time they were made were known by the insured to be false and thereby "he did induce the defendant to make with him an insurance contract which the defendant would not have made except for said false representations of the said applicant."

C. S., sec. 5037, contains the following provisions:

"Nor shall any such policy be so issued or delivered unless it contains, in substance, the following provisions: . . . .

"3.   That the policy and the application therefor shall constitute the entire contract between the parties thereto, and that all statements made by the insured, in the absence of fraud, shall be deemed representations and not warranties; and that no statement shall be used to void the policy unless it is contained in the written application, a copy of which shall be indorsed upon or attached to the policy when issued."

The substance of this statutory provision is expressed in the policy as follows:

"Miscellaneous Provisions.—The policy and the application therefor constitute the entire contract between the parties. All statements made by the insured shall, in absence of fraud, be deemed representations and not warranties, and no such statement shall void this policy or be

used in defense to a claim hereunder unless it be contained in said written application, a copy of which was attached to this policy when delivered.''

The application, which by the statute of this state and by the terms of the policy is made a part of the contract, contains the following declaration:

''I agree, represent and declare, on behalf of myself and of every person who shall have or claim any interest in any insurance made hereunder, that I have carefully read each and all of the above answers, that they are each written as made by me, that each of them is full, complete and true, and that to the best of my knowledge and belief I am a proper subject for life insurance. Each and all of my said statements, representations and answers contained in this application are made by me to obtain said insurance, and I understand and agree that they are each material to the risk and that the company believing them to be true will rely and act upon them.

''I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has heretofore attended or examined me, or who may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired.''

This declaration has the appearance of an attempt to make a warranty of the answers given by the insured in his application, but if this was the intention no such effect can be given to it in the face of the provisions of the statute and the policy above quoted. It has been generally held that compliance with the terms of a warranty must be strict and literal, while the rule has been that as to representations it is sufficient if there has been a substantial compliance. The purpose of the enactment of C. S., sec. 5037 was to prevent the forfeiture of insurance policies by the application of the severe and harsh rule governing warranties, and it must be held under this stat-

ute that its provisions may not be set aside and immaterial matters made material by the contract of the parties, as seems to have been attempted in this case.

Other courts have adopted this view under similar statutes. (See *Fidelity Mut. Life Assn. v. Ficklin*, 74 Md. 172, 21 Atl. 680, 23 Atl. 197; *Union Cent. Life Ins. Co. v. Pollard*, 94 Va. 146, 64 Am. St. 715, 26 S. E. 421, 36 L. R. A. 271; *Southland Life Ins. Co. v. Hopkins* (Tex. Civ.), 219 S. W. 254; *New York Life Ins. Co. v. Hardison*, 199 Mass. 190, 127 Am. St. 478, 85 N. E. 410.)

The answer in this case sets up several defenses, but on the trial of the case in the district court and on this appeal there appears to be nothing urged except the misrepresentations above mentioned. The evidence shows that about a year before applying for the insurance in controversy the insured visited Dr. Braddock, of Lewiston, Idaho, and consulted him with reference to his condition. Of this visit Dr. Braddock says: "As I remember it, it was three years ago. I have seen an awful lot of people since then; he came in there complaining of indigestion and overwork; and I examined him and found nothing very much the matter with him, as I remember; the prescription I gave him was to go out to Waha and rest up a month; I think I gave him at the time an alkaline digestive."

The evidence shows that the patient acted upon the advice of the physician and thereafter said he was much improved and that he appeared to be so. Almost a year later the insured returned to Dr. Braddock complaining of practically the same thing as he did the year before, and Dr. Braddock says that he "went over him pretty carefully, weighed him, as I remember, and made as careful a physical examination as I could," and found nothing wrong with him except the symptoms he was complaining of. He diagnosed the trouble as gastric neurosis, which he said might be designated as a sour stomach, but that he did not consider it a disease of the stomach. He also said

that he was and had been for several years an examiner for several life insurance companies, including the appellant in this case, and that from what he knew of the physical condition of the insured at any time prior to May, 1916, when the insured obtained the policy, he would have passed him as a fit subject for life insurance; that in his opinion the insured was not suffering from any organic disease nor from anything that "would shorten his expectancy of life."

Among the findings made by the court were the following:

"6. That the said Ervin L. Russell was in good health when he received the insurance policy referred to in plaintiff's complaint; that he was not under treatment of any physician.

"7. That the said Ervin L. Russell did not make false and untrue statements to the defendant in order to secure the policy of insurance above referred to. That he was not suffering from any disease or ailment; that he was not under the care or treatment of any physician and all questions answered by the said Ervin L. Russell were done in good faith."

No finding was made touching the materiality of question No. 9 and the answer thereto, but appellant is not complaining of such default. We think the evidence sufficient to sustain the findings of the court as to the matters referred to in question No. 8. These ailments or diseases seem to come within the rule laid down in *Penn Mutual Life Ins. Co. v. Mechanics Savings Bank & Trust Co.*, 72 Fed. 413, at page 432, as follows: "It is well settled that mere temporary ailments or affections, not of a serious or dangerous character, which pass away and are likely to be forgotten, because they leave no trace in the constitution, are not to be regarded as diseases, within the meaning of a life insurance policy."

The most serious question involved in this case is the effect of the answer to the question whether the insured had

consulted or been treated by a physician within five years. According to the undisputed testimony the answer to this question is not true. The gist of the defense relied on is that the company was misled by this and the other answers mentioned and so was induced to make a contract of insurance that it would not have made but for such untrue answers. We think the record fails to sustain this contention.

In support of its defense appellant introduced the deposition of Dr. Calvin L. Harrison, who has been since 1891 a medical examiner for the New York Life Insurance Company and a member of its' medical board. He testified in part as follows:

"Q. Do you know a person in the medical department of the defendant named K. A. Gallagher? A. Yes.

"Q. How long have you known said Gallagher? A. Ever since he entered the defendant's employ some twelve or fifteen years ago.

"Q. What, if you know, were the duties of said Gallagher as an employee of the defendant during the year 1916? A. To examine applications for insurance and the medical examiner's report, which is always on the reverse side of the applicant's answers to the medical examiner, and to examine the answers to the medical examiner, which is a part of the application, as well as the whole application, and if such examination discloses that every answer of the applicant in the application and the answers to the medical examiner and the medical examiner's report is favor-. able to him, then it was the duty during said year of the employee Gallagher to pass upon such favorable application and to accept it, but if there was any statement or answer in any of said papers that was not clearly favorable to the insurability of the applicant, then it was the duty of said Gallagher not to accept the application, but to refer it to me or to some other member of the medical board of the defendant for the action of such member of the medical board pursuant to the rules and practice of the defendant.

"Q. Suppose in the answers made by Mr. Russell to the defendant's medical examiner, as shown by the photographic copy which you have attached to your deposition, identified as Harrison's Exhibit A, the applicant had disclosed in substance and effect that within five years before the date of his application he had consulted or been treated by a physician, what would have been the duty of said K. A. Gallagher under the defendant's rules and practice in such case? A. It would have been his duty not to approve or accept the application but to refer it to me or some other member of the defendant's medical board for our action under the defendant's rules and practice applying to such cases.

"Q. What was the rule and practice of the defendant where the answers to the medical examiner made such disclosure? A. The rules and practice were not to accept the application but to suspend action thereon until the defendant could fully investigate and find out all about the consultation or treatment referred to in the answers to the medical examiner, this investigation to involve among other things an inquiry of the physician or physicians who consulted or treated him, and if it was deemed necessary, another medical examination and the like, and after finding out the facts then to take such action as the facts so disclosed, together with those contained in the application and medical examiner's report would warrant.

"Q. Suppose such investigation had disclosed that the applicant at or within some months before the time of making the application was suffering from symptoms of stomach and intestinal trouble, what under the defendant's rules and practice would have been the duty of the member of the medical board before whom such disclosure came in acting upon the application? A. It would have been the duty either to decline the application or to investigate further as to the cause of the trouble with special reference to malignant disease or ulcer of stomach or intestines.

"Q. What would be the rule and practice of life insurance companies generally where an applicant for insurance made such disclosure? A. The same as I have stated in answer to the previous question.

"Q. Suppose that the investigation suggested by the original of Harrison's Exhibit A had disclosed that on or about the twenty-second day of June, 1916, the applicant had quit work on account of illness, what would have been the duty of the employee of the defendant passing upon an application making such disclosure under the rules and practice of the defendant? A. To require our examiner to investigate the nature of the illness and to take measures to obtain, if possible, through the applicant a statement from his physician regarding the nature of the illness or else to decline the application."

It will be observed that Dr. Harrison nowhere states that an affirmative answer to any one or all of these questions would have caused the rejection of the application of the insured. He goes no further than to say that if the examination showed that the applicant was suffering from symptoms of stomach and intestinal trouble the company would either have declined the application or made further investigation, with special reference to malignant disease or ulcer of stomach or intestines, and that if the applicant had disclosed that within five years before his application was made he had consulted or been treated by a physician it would have been the duty of Mr. Gallagher not to accept the application but to refer it to some member of the medical board. He also said that in such case action on the application would be suspended until an investigation, including an inquiry of the physician who had treated the applicant or with whom the applicant had consulted, could be carried on; and that after finding out the facts appropriate action would be taken.

Even if we had not this testimony common sense and reason tell us that from the nature of these questions an affirmative answer would not have closed the case against

the applicant, but that the company would have investigated before finally denying the applicant the protection he was seeking.

Let us suppose that true answers had been made to these questions. Undoubtedly an inquiry would have followed. From whom would information have been sought? Dr. Braddock would have been named as the physician consulted and according to Dr. Harrison Dr. Braddock would have been questioned. We have Dr. Braddock's testimony before us and the substance thereof has been stated. Can it be thought that if he had been interviewed when this application was pending his answers would have differed materially from what he said on the trial of this case? If not, then the insurance contract would have followed. That this contract would have so resulted from true answers seems to us to be settled beyond question by the record, and it then follows that appellant was not misled to its injury, if it was misled at all, by the untrue answers made in the application. In this situation the questions and answers were not material to the risk.

"A fact is material to an insurance risk when it naturally and substantially increases the probability of that event upon which the policy is to become payable. . . . . A fair test of the materiality of a fact is found, therefore, in the answer to the question whether reasonably careful and intelligent men would have regarded the fact, communicated at the time of effecting the insurance, as substantially increasing the chances of the loss insured against. The best evidence of this is to be found in the usage and practice of insurance companies in regard to raising the rates or in rejecting the risk on becoming aware of the fact. If the rates are not raised in such a case, it may be inferred that reasonably careful men do not regard the fact as material. If the rates are raised, or the risk is rejected, then they do." (*Penn Mut. Life Ins. Co. v. Mechanics' Savings Bank & Trust Co.*, 72 Fed. 413, at 428, 19 C. C. A. 286, 38 L. R. A. 33, 70.)

Question No. 9 clearly is a preliminary question, the answer to which in no event could afford ground for final action upon the application. If it were answered truly there is a possibility of its developing matter that would be very material to the risk, but, as has been pointed out already, if the answer had been true in this case nothing would have developed that would have been material to the risk according to the test above stated.

There are many cases reported in which a false answer as to treatment by and consultation of a physician are shown to be material, but they are cases in which the inquiry that would have resulted from a true answer would have disclosed facts that would have led certainly to a rejection of the application. In such cases a false answer would undoubtedly mislead the insurer to its injury and would therefore be material to the risk.

The judgment in this case is affirmed, with costs to respondent.

McCarthy and Lee, JJ., concur.

Petition for rehearing denied.