443 P.2d 456

R. H. MATTHEWS, Plaintiff-Respondent,
v.
NEW YORK LIFE INSURANCE CO., a corporation, Defendant-Appellant.

No. 10115.

Supreme Court of Idaho.

July 5, 1968.

Moffatt, Thomas, Barrett & Blanton, Boise, for appellant.

Hepworth, Nungester & Felton, Buhl, for respondent.

SMITH, Chief Justice.

This is an appeal from a summary judgment granted in favor of respondent (plaintiff) Matthews, in an action to recover the proceeds of a $10,000. group life insurance policy issued in the name of Rufus D. Moore.

Respondent Matthews is president and principal stockholder of Peacock Beauty College and Salon, an Idaho corporation having its principal place of business in Nampa, Idaho. The corporation is the named employer in the group policy in issue; respondent is the sole beneficiary named in the policy issued in the name of Rufus D. Moore, now deceased.

Decedent, Rufus D. Moore, was a public accountant with his own independent business office in Nampa. Respondent Matthews became acquainted with Moore in 1946 when Moore commenced to perform income tax work for respondent. Moore continued to do accounting work for Matthews and for various business concerns in which Matthews had an interest. In 1954 Moore made a loan of approximately $3,700. to Matthews. Until the time of his death, Moore was issued one share of stock in the corporation as an incorporator. The only other shareholders of the corporation were respondent and his wife; the percentage of ownership of the three shareholders is not indicated by the record.

Moore, until 1964, took care of the tax returns and end-of-year accounting for Peacock Beauty College and Salon and other related corporations in which respondent was interested, for which work Moore received, until 1964, "probably $1,500. to $2,000. a year." Moore performed all his work, except in rare instances, at his own accounting office; he at no time maintained an office at the place of business of the corporation. Respondent Matthews stated that he was uncertain as to the number of hours spent by Moore on corporation matters in any week during their continued relationship. After 1964 Moore did no accounting work for the corporation because his work was taken over by a firm of certified public accountants.

Prior to August 1, 1965, Peacock Beauty Salon carried its group insurance with appellant insurance company. The policies were written by one Duane Thueson, deceased, agent for appellant New York Life Insurance Company. In 1965, Thueson and respondent Matthews discussed the possibility of writing a more comprehensive type of group insurance, to amend by replacement group policy No. GS–11945 then in effect. Rufus Moore, as public accountant, also discussed the matter with Thueson and helped negotiate the replacement policy, No. G–20782–0.

The amended group policy was written to be effective August 1, 1965, with subsequent anniversary dates on August 1 of each ensuing year. The policy provided, in pertinent part, as follows:

> "*Employee To be Insured.*—Eligible Class or Classes of Employee: All active full-time employees of the Employer, except temporary and seasonal employees. * * * For purposes of this policy, employees who work less than 30 hours per week at the usual location or locations where the business is transacted shall not be considered full-time employees."

August 12, 1965, Rufus Moore signed a document entitled "enrollment card" which, immediately above his signature, recited:

> "*Request for Group Insurance.*—I hereby declare that the above information is correct, that I regularly work and at present am working at least 30 hours a week for the Group Policyholder at the policyholder's place of business or other locations to which I am required to travel to perform the regular duties of my employment and that to the best of my knowledge and belief I am eligible for insurance under the terms of the Group Policy or Policies issued to the Group Policyholder by New York Life Insurance Company. I hereby request the insurance thereunder to which I may become entitled, and authorize the deduction from my earnings of any contribution I am required to make toward the cost of this insurance."

The beneficiary on Moore's enrollment card was indicated as "Matthews, Richard," which fact was known to respondent from the time of commencement of the term of the policy. The relationship indicated on th enrollment card by decedent Moore was "friend."

The group insurance policy No. GS-11945 (replaced by group policy No. G-20782-0) was obtained by Peacock Beauty College and Salon in 1961, and it was maintained continuously from that time. Rufus Moore was covered under that group from November, 1961.

Moore died April 9, 1966. Thereafter appellant company initiated an investigation of the claim presented by respondent as beneficiary. The company denied the claim on the basis that Moore was not an eligible employee within the meaning of the policy because he did not work 30 hours per week for the group policyholder.

Duane Thueson, agent for appellant company, died July 24, 1966.

Donald W. Merrill, appellant's home office group representative stated in his deposition that he had no knowledge concerning the status of Rufus Moore or of any of the employees submitted on the enrollment cards. Merrill further stated that the agent Thueson had knowledge of the restriction contained in the enrollment card pertaining to the number of hours required to qualify for insurance, and that such restriction had been specifically discussed between himself and Thueson. Merrill stated that both Mr. and Mrs. Thueson seemed to be well acquainted with the decedent Moore and appeared to be personal friends; Merrill presumed thereby that the Thuesons knew of the status of Moore.

The district court on July 7, 1967, entered its order granting summary judgment for respondent. The court held, in pertinent part:

"(1) That there are no issues of material fact for submission to a jury; (counsel for defendant advised the Court at the time of hearing said motion, in response to a question directed by the Court, that the only evidence not before the Court that they might have or would likely produce at a latter time would be the work records of the plaintiff's business to show that at the time of the death of Mr. Rufus D. Moore he was not working thirty hours per week at the usual location or locations where the business of the employer is transacted. This fact is not disputed by the plaintiff either in argument or by the record, so, in the opinion of the Court it is not a factual issue that needs determination.)

"(2) That at the hearing of said motion defendant did not produce or tender to the Court any affidavits or other documents to contradict plaintiff's showing of estoppel, waiver and ratification by the defendant corporation. (Idaho Rules of Civil Procedure Rule 56E). [Citation of authorities] Nor was there any showing by the defendant of why affidavits or documentary evidence could not or was not available to them to meet the plaintiffs' showing. (Idaho Rules of Civil Procedure 56F).

"The above cited cases substantiate plaintiff's showing of estoppel, waiver and ratification on the record before the Court as well as the need for defendant to refute the facts set forth therein or show cause why he could not.

"(3) That while the incontestability clause and eligibility provision of the contract in question are distinguishable as argued by defense counsel and that under ordinary circumstances would provide that one could become ineligible under said policy by failing to work the thirty hours required even after the policy became incontestable on other grounds, this is not the issue before the Court in the absence of counter affidavits filed by the defendant as above stated; the case before the Court as it stands is whether or not an agent of the defendant insurance corporation with full knowledge of existing facts at the time of issuing said policy and thereafter can waive a provision within the contract and the defendant corporation be bound by it. (see record) This essentially is a legal question and the only real question before the Court since the facts otherwise are not disputed. [Citation of authorities]"

The trial court awarded $2,500 attorney's fees to respondent in the summary judgment proceedings.

Appellant company, since the inception of Moore's policy coverage in 1961, had accepted the insurance premiums paid on behalf of Moore, and under the insurance policy, had made payments on claims for medical and hospital expenses incurred by him.

After Moore's death, and appellant's refusal to pay the proceeds of the policy, respondent commenced this action against appellant company alleging that Moore was included within the group and that appellant had insured his life for $10,000. Appellant, in its answer, alleged its tender back to the beauty salon of all premiums paid on behalf of Moore, and further alleged the decedent Moore "wilfully, knowingly and fraudulently" declared and certified that he regularly worked and was presently working at least thirty hours a week for the group policyholder at the policyholder's regular place of business.

The depositions of Merrill, Mrs. Thueson, and respondent R. H. Matthews, and affidavits of Matthews and of three other persons were submitted to the court. Both parties moved for summary judgment.

Appellant contends that the trial court erred in granting summary judgment for respondent, for the reason that there were genuine unresolved issues of material fact. See I.R.C.P. 56(e).[1] In support of its argument, appellant maintains that certain evidence contained in the depositions and affidavits submitted by respondent in support of his motion for summary judgment was inadmissible because it was not based upon the personal knowledge of deponents.

Appellant contends that certain portions of respondent's affidavits were inadmissible to show that agent Thueson had knowledge of Moore's failure to work 30 hours per week for the group policyholder. Respondent Matthews stated in his affidavit:

> "* * * That Duane Thueson knew that Rufus D. Moore was covered under the group policy and was not actively engaged in working directly for the corporation, but was an advisor, consultant, and officer for Peacock Beauty College and Salon. That Duane Thueson assured affiant that Rufus D. Moore was covered as a key man and officer and Duane Thueson had as much or more knowledge of the time which Rufus D. Moore devoted to Peacock Beauty College and Salon and other related corporations as did affiant. * *"

Certainly Matthews' statements as to the knowledge possessed by agent Thueson concerning Moore's status as an employee are conclusions on the part of respondent, and ordinarily inadmissible as hearsay. There is no showing herein that such statements were based on Matthews' personal knowledge, and therefore, such portion of Matthews' affidavit is insufficient to support a motion for summary judgment. See Mercantile Nat. Bank at Dallas v. Franklin Life Ins. Co., 248 F.2d 57 (5th Cir. 1957); Hummell v. Wells Petroleum Co., 111 F.2d 883 (7th Cir. 1940); see also Person v. United States, 112 F.2d 1 (8th Cir. 1940); I.R.C.P. 56(e).

The question thus arises whether the record, from the depositions and affidavits

1. I.R.C.P. 56(e) reads:
"* * * Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleading, but must answer in detail as specific as that of the moving papers, setting forth the material facts as he believes and intends to prove them to be. If he does not so answer under oath, summary judgment shall be entered against him."

submitted, affirmatively demonstrates that Thueson had knowledge of Moore's failure to comply with the contract's definition of "employee," so that such knowledge could be imputed to appellant insurance company. We have carefully examined the record, and we conclude that there exists a material issue of fact whether agent Thueson had knowledge of Moore's misrepresentation as to his status as an employee of the policyholder. In that regard, Thueson's wife's deposition stating the friendship relationship between Moore and Thueson, and the various statements contained in the record to the effect that Thueson and Moore worked closely together in drawing up the group insurance contract, are not indicative of Thueson's knowledge of Moore's precise status with the group policyholder.

A summary judgment will not be granted where a genuine issue of material fact exists. Yribar v. Fitzpatrick, 87 Idaho 366, 393 P.2d 588 (1964); Sutton v. Brown, 85 Idaho 104, 375 P.2d 990 (1962); Merrill v. Duffy Reed Construction Co., 82 Idaho 410, 353 P.2d 657 (1960); Barron & Holtzoff, Federal Practice and Procedure, Vol. 3, sec. 1237. The trial court erred in finding as a matter of fact that the deceased agent of appellant, Duane Thueson, had knowledge of the facts misrepresented by Moore. Accordingly, we reverse the summary judgment and remand the cause for further proceedings.

Appellant contends that the trial court further erred in concluding, as a matter of law, that "the established fact that Rufus D. Moore did not qualify as an employee of the group policyholder was immaterial to its decision." The trial court based its order granting the summary judgment upon the assumption that agent Thueson had full knowledge of the existing facts as to Moore's status at the time of issuing the insurance policy in question, and thus that he had waived a provision of the insurance contract. The court thus determined that the only relevant issue before it was whether appellant insurance company should be bound by its agent Thueson's knowledge and actions.

In view of our reversal of the summary judgment, Moore's misrepresentation on his enrollment card becomes potentially material to the ultimate determination of this action for the reason that such could relate directly to Moore's eligibility for the insurance. See I.C. § 41-1811.[2] A contract of insurance, and the liability of an insurer, may be avoided by reason of fraud in the inception of the contract, or a concealment, or a misstatement of matters material to the risk. Pond v. Idaho Mutual Benefit Association, 81 Idaho 38, 336 P.2d 314 (1959); Charlton v. Wakimoto, 70 Idaho 276, 216 P.2d 370 (1950); Ebner v. Ohio State Life Ins. Co., 69 Ind.App. 32, 121 N.E. 315 (1918); McSweeney v. Prudential Ins. Co. of America, 128 F.2d 660 (4th Cir. 1942); Owen v. United States Surety Co., 38 Okl. 123, 131 P. 1091 (1913); Eklund v. Metropolitan Life Ins. Co., 89 Utah 273, 57 P.2d 362 (1936). See I.C. § 41-1811.

2. "41-1811. Representations in applications.—All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:

(a) Fraudulent; or

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, or would not have issued it at the same premium rate, or would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise."

A further question arises whether Moore's misrepresentation was actually material either to the acceptance of the risk or to the hazard assumed by the insurer. See I.C. § 14–1811, supra; Russell v. New York Life Ins. Co., 35 Idaho 774, 209 P. 273 (1922). Would appellant, in other words, have issued the insurance policy in question even if it knew at the time of issuance that Moore did not work 30 hours per week for the group policyholder? The deposition of Donald W. Merrill, appellant's home office group representative, suggests a potentially ambiguous and flexible policy by appellant in determining whom it would insure in contracts such as the one at bar. In view of the uncertainty concerning the materiality of Moore's misrepresentation, this issue should be resolved by the trier of the facts at the time of the trial.

Appellant argues that the trial court erred in concluding as a matter of law that the agent, Duane Thueson, having knowledge of the misrepresentations of Rufus Moore, waived the policy's eligibility provisions as to Moore, and thus bound appellant by his waiver. Appellant contends that where the evidence indicates that an agent has knowledge of a misrepresentation of the facts in an application for insurance, there is a presumption that collusion existed between the agent and the applicant signing the insurance application. Emery v. New York Life Ins. Co., 316 Mo. 1292, 295 S.W. 571 (1927); Kelly Contracting Co. v. State Automobile Mut. Ins. Co., 240 S.W.2d 60 (Ky.1951); 3 Couch on Insurance 2d, sec. 26.142, p. 683. In view of our holding that an issue of fact exists as to Thueson's knowledge of Moore's status, we shall not rule upon such contention.

A related matter of law upon which we must rule, however, is presented by appellant's assignment of error. See I.C. § 1–205. Respondent contends that since appellant insurance company did not allege collusion in its pleadings, nor by affidavit or other documents at the time of hearing on the motion for summary judgment, such affirmative defense cannot be raised for the first time on appeal. Appellant's first affirmative defense reads as follows:

> "That on or about the 12th day of August, 1965, Rufus D. Moore did execute a request for group insurance pursuant to the policy as set forth in the complaint; that a true and correct copy of said application signed by Rufus D. Moore and naming Richard Matthews as beneficiary is attached hereto as Exhibit "C" and made a part hereof by reference. That said Rufus D. Moore did wilfully, knowingly and fraudulently declare and certify that he regularly worked and was at present working at least 30 hours a week for the group policyholder at the policyholder's place of business, when in truth and in fact said Rufus D. Moore was not employed by said group policyholder, Peacock Beauty School and Salon on the date of his said application or thereafter."

Fraud is an affirmative defense which must be pleaded with particularity. I.R.C.P. 8(c); I.R.C.P. 9(b); Berryman v. Dore, 43 Idaho 327, 251 P. 757 (1926); Milner v. Earl Fruit Co. of the Northwest, 40 Idaho 339, 232 P. 581 (1925); Frank v. Davis, 34 Idaho 678, 203 P. 287 (1921).

Appellant having specifically pleaded fraud, is not now precluded from asserting collusive fraud by the policyholder. Moreover, appellant is accorded the right to amend its pleadings by leave of court "when justice so requires," I.R.C.P. 15(a); also, as may be necessary to cause them to conform to the evidence. See Koseris v. J. R. Simplot Company, 85 Idaho 1, 375 P.2d 130 (1962).

A further issue raised by appellant's specification, i. e., that the trial court erred in failing to enter a summary judgment for appellant, is presented by the incontestability provision in the insurance contract. Pursuant to I.C. § 41–2012,[3] the insurance

3. "41–2012. Incontestability.—The group life insurance policy shall contain a provision that the validity of the policy shall not be contested, except for nonpayment

policy in question includes the following clause:

> "The validity of this policy shall not be contested, except for nonpayment of premiums, after it has been in force for one year from the date of issue. The validity of the insurance on any employee shall not be contested, except for nonpayment of premiums, after his insurance has been in force for one year during his lifetime. No statement made by an employee relating to his insurability shall be used in a contest unless (a) it is contained in a written request for insurance signed by him, and (b) a copy of such request has been furnished to him or his beneficiary."

Appellant contends that, despite the clarity of such provision, the incontestability clause was not meant to protect persons not having an insurable interest. See Fisher v. U. S. Life Ins. Co. in City of N. Y., 249 F.2d 879 (4th Cir. 1957); Aetna Life Ins. Co. v. Hooker, 62 F.2d 805 (6th Cir. 1933); Clement v. New York Life Ins. Co., 101 Tenn. 22, 46 S.W. 561, 42 L.R.A. 247, 70 Am.St.Rep. 650 (1898); 1 Appleman, Insurance Law & Practice, sec. 319, p. 570. Appellant further contends that Moore, never having actually worked 30 hours per week for the group policyholder, never came within the terms of the contract and thus never possessed an insurable interest sufficient that respondent can now claim the protection of the incontestability clause of the contract.

We need not answer this contention because the application of the incontestability clause to the case at bar is not clear. Moore signed the enrollment card, containing his misrepresentation as to his employee status, on August 12, 1965. He died April 9, 1966, less than a year from the date of submission of his enrollment card. Thus, his insurance by group policy No. G–20782–0 had not been in force for one year during his lifetime, and the incontestability provision would normally have no application to respondent's present action. See Chicago Nat. Life Ins. Co. v. Carbaugh, 337 Ill. 483, 169 N.E. 218 (1929); Greenbaum v. Columbian Nat. Life Ins. Co. of Boston, 62 F.2d 56 (2nd Cir. 1932); Occidental Life Ins. Co. of California v. Kielhorn, D.C., 98 F.Supp. 288 (1951). See also Palmer v. John Hancock Mut. Life Ins. Co. of Boston, Mass., 148 Misc. 324, 265 N.Y.S. 796 (1933); 1 Appleman, sec. 318, p. 566.

The record indicates, however, that Moore had been insured by appellant under a group life insurance policy since November 13, 1961, and that the group policy written in 1965 was an amendment to, or reinstatement of, the earlier policy, designed to afford broader coverage to the group.

The previous group insurance policy, No. GS–11945, to which the policy in question serves "as an amendment by replacement," is not included in the record. We thus cannot know whether a similar incontestability clause existed in the earlier policy; nor whether any such clause, by reason of Moore's continued status as a non-employee, has operated to bar appellant from denying liability on the basis of Moore's misrepresentation. See 1 Appleman, Insurance Law & Practice, sec. 320, pp. 571–582; see also 18 Couch on Insurance 2d, sec. 72:51, pp. 71–72.

In this regard we recognize that the period of contestability may have expired before the 1965 replacement of group policy No. GS–11945 if Moore had made a similar representation while in a similar capacity, under a like clause in the earlier policy.

A necessary corollary of such question is whether the replacement policy, No. G–20782–0, constitutes an entirely new contract, between the insurer and the insured,

of premium, after it has been in force for two years from its date of issue; and that no statement made by any person insured under the policy relating to his insurability shall be used in contesting the validity of the insurance with respect to which such statement was made after such insurance has been in force prior to the contest for a period of two years during such person's lifetime nor unless it is contained in a written instrument signed by him."

including new or varied representations made by the insured, so that the commencement of the running of the incontestability clause should be determined by the August 12, 1965, date. These being questions of fact, they should be determined by the trier of the facts.

Inasmuch as we remand this cause for further proceedings, we cannot presently resolve the question of the respondent's asserted right to attorney's fees. See I.C. § 41–1839.

Reversed and remanded for further proceedings. Costs to appellant.

TAYLOR, McQUADE, McFADDEN and SPEAR, JJ., concur.