Clella I. GOODWIN, Appellant,

v.

KANSAS CITY LIFE INSURANCE COMPANY, Respondent.

No. 22174.

Kansas City Court of Appeals.

Missouri.

April 4, 1955.

Albert Thomson, Davis, Thomson, Van-Dyke & Fairchild, Kansas City, for appellant.

Ray B. Lucas, Jos. R. Stewart, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, widow of LeRoy Goodwin, deceased, sued defendant on two life insurance policies issued to deceased. She had a judgment for $5,000, the full amount of the policies, plus penalties for $500. The court set the judgment aside and rendered judgment for defendant. Plaintiff appeals. The issue is whether or not a submissible case was made.

The policies are identical (except for date), in the amount of $2,500 each, and were issued on a single application. They bore date as of June 8 and June 12, 1951. The application was in two parts, dated May 8, 1951. All premiums accruing thereon were paid. Insured died of cancer on October 24, 1952.

Defendant contends, (1) that the policies are void because plaintiff was not in good health, but was suffering from cancer, when they were issued and delivered; and, (2) that plaintiff knew that he was not in good health when he executed the application therefor but that he, nevertheless, fraudulently represented to defendant that he was in good health and fraudulently concealed certain vital information concerning medical and surgical treatments which he had undergone. Defendant's first contention is bottomed on its theory that the policies contained a "good health" provision; that there is conclusive proof that insured was not in good health when the policies were issued; and that the policies are, therefore, void, whether or not insured knew that he was not in good health at the time he applied for the insurance. See Kirk v. Metro-

politan Life Insurance Company, 336 Mo. 765, 81 S.W.2d 333, 343; Lipel v. General American Life Insurance Company, Mo. App., 192 S.W.2d 871, 875.

Plaintiff virtually concedes that insured, at the time he applied for the policies, was not in good health; but she contends that the policies do not contain "good health" provisions; that there is not conclusive proof of insured's knowledge of his ill health nor of his fraudulent answers to questions concerning the condition of his health and of his previous medical and surgical treatment.

We believe that there was conclusive proof that insured was suffering from cancer, of which he died within 18 months after the policies were issued, and that he fraudulently concealed from defendant material facts regarding medical and surgical treatment undergone by him; that he falsely answered questions relating thereto in his written application for the policies. We shall confine our discussion of the law and the evidence to that issue.

■ It appears from the testimony of plaintiff, and from documentary evidence constituting a part of the proofs of death signed and filed by her, that insured died from cancer originating in the left testicle, which was removed for that cause in 1946. Hospital records also established the cause of death to have been cancer originating in and spreading from the cancerous testicle. Such records constituted *prima facie* evidence of the facts therein shown and, being unimpeached and unchallenged, they became conclusive. Hendricks v. National Life & Accident Insurance Company, 240 Mo.App. 557, 210 S.W.2d 706, 709, and cases there cited.

The hospital records also constituted conclusive proof of the following facts: that insured underwent an operation in 1946, at which time the left testicle was removed; that, immediately following that operation, he underwent extensive X-ray therapy; that, in 1949, he again underwent extensive X-ray therapy; that, in January, 1951, he suffered pain in the left side, and had so suffered for two years and had been given

X-ray therapy therefor; that insured's outlook was grave and prognosis poor; that he was admitted to hospital for treatment of his cancerous condition in March, August, and October, 1952; that he died from that cause October 24, 1952.

Insured was a member of the Kansas City police department and resigned therefrom some years prior to 1951. He applied for reinstatement to the police department and submitted to a medical examination by Dr. Lapp, police surgeon, on March 23, 1951. The report of that examination was introduced into evidence by plaintiff. It is recited therein that insured's left testicle was removed "10 years ago at hernia operation."

The hospital records and the testimony of plaintiff conclusively prove that insured suffered from a cancerous condition, continuously, from 1946 until the date of his death; that he underwent a major operation, at Research Hospital, in 1946, at which time his left testicle was removed; that he received 25 X-ray therapy treatments for that condition, immediately following the operation; that, in 1949, he again was examined and received 5 X-ray treatments; that, in 1950, he was treated by Dr. Fricke; that, on January 15, 1951, he entered the hospital for treatment, and remained there until January 20; that, at that time, he complained of severe pain in the left groin, kidney region, which followed removal of the left testicle (he was not sure it was malignant), and that the pain episode occurred every week or so and would last from one to five days; that, while in hospital, insured was thoroughly X-rayed, fluoroscoped, and otherwise examined, treated and prescribed for; that extensive X-ray therapy was given following that hospitalization.

Defendant's exhibit 1 is denominated "Part one" of insured's application for insurance. It is dated May 8, 1951, signed by insured, and contains, among other things, the following:

"Q. Are you in good health? A. Yes."

Defendant's exhibit 3 is denominated "Part Two" of insured's application. It is

dated May 8, 1951, and the following questions, answers, and statements appear therein, over the signature of insured:

"15. Are you suffering from any impairment of health (If so give particulars). No.

"16. Have you ever been under observation, care, or treatment in any hospital, sanitarium, asylum, or similar institution? No.

"17. Have you ever had any surgical operations? (If so, what?) No. Hernia operation–1940.

\* \* \* \* \* \*

"19. Describe below all causes for which you have consulted or been treated by a physician, healer or medical practitioner during the past 10 years? None.

\* \* \* \* \* \*

"I hereby declare that all statements and answers to the above questions are complete and true, and I agree that they shall form a part of the contract of insurance applied for.
"C. LeRoy Goodwin."

Defendant's exhibit 2, being information given to the medical examiner, and a continuation of Part Two of the application, dated June 5, 1951, contains the following questions, answers and statements over insured's signature:

"D. Have you ever undergone any surgical operations? Yes. Bilateral herniotomy. Left 1936. Right 1928. 2 weeks each cured.

"E. Have you ever consulted or been examined or treated by, or under the care of any physician, healer, or medical practitioner? Yes. See above.

"I hereby declare that the statements and answers to the above questions are complete and true, and I agree that they shall form a part of the contract of insurance applied for.

"Dated this 5th day of June, 1951.

"Clifton LeRoy Goodwin.

"Witness C. G. Edde, M.D."

In the light of plaintiff's testimony, and of the unimpeached hospital records, it conclusively appears that the answers given by insured in his application were not true.

However, plaintiff contends that it does not conclusively appear that insured knew that said answers were not true and that, therefore, the question of fraud and concealment was one for the jury and not for the court.

There is no room for difference of opinion among fair-minded men that insured knew that his left testicle had been surgically removed in 1946. He reported that fact to his doctor, at Research Hospital, January 15, 1951, within less than 4 months of execution of the application for insurance. He also reported it to Dr. Lappe, the police examiner, March 23, 1951, less than 60 days prior to execution of defendant's exhibits 1–2–3, above. It is common knowledge that normal men do not forget, or fail to remember, having undergone a major surgical operation of that nature. The evidence is conclusive that he also knew, at the time he signed the application, that he had undergone medical treatment from a number of doctors since 1946, had suffered severe pain on numerous occasions, and had received X-ray therapy therefor in 1946, 1949, and 1951. The record here shows insured to have been a highly intelligent and capable police officer and investigator for an express company. There was no hint of defective memory or of mental illness at any time during his life. We must presume, and we hold, that insured knew, and was fully conscious, of these important personal experiences at the time he signed the application. Nothing to the contrary appears of record.

While it is not "spelled out" by the positive evidence that insured knew that he had *cancer*, he did know that his testicle (the only one that was descended) was surgically removed and that, following that operation, he suffered for many years from severe pain for which he was hospitalized a number of times, given several series of X-ray therapy treatments, and was examined

and treated by several doctors; and it was conclusively proven that the illness from which he suffered when he applied for the policies, and of which he died, was cancer. Insured knowingly misrepresented his physical condition and concealed the facts concerning that illness and thereby effectually prevented defendant from learning that he suffered from a disease which, eventually, caused his death. Such fraudulent misrepresentations by insured will bar recovery on the policies as a matter of law. Emery v. New York Life Insurance Company, 316 Mo. 1292, 1302, 295 S.W. 571; State ex rel. Dyer v. Blair, 352 Mo. 584, 178 S.W.2d 1020.

The judgment should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.