**Mauddell PEETE, Respondent,**

v.

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellant.**

No. 48857.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 28, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 16, 1985.

Application to Transfer Denied
Oct. 16, 1985.

Edward K. Fehlig, Clayton, for appellant.

Gary Richard Sarachan, St. Louis, for respondent.

REINHARD, Chief Judge.

Plaintiff sued for recovery as the beneficiary of a $7,454.00 life insurance policy on her husband. Defendant raised the affirmative defense of material misrepresentation in regard to a pre-existing heart condition of the insured, Charlie Peete. At the close of all the evidence, defendant's motion for a directed verdict was denied. The trial court entered judgment in favor of the plaintiff for the face amount of the policy and interest, in accordance with the jury's verdict, and denied defendant's motion for judgment n.o.v. We affirm.

The insurance company's sole point on appeal is:

The trial court erred in denying defendant's motion for directed verdict at the close of all the evidence, entering judgment for the plaintiff for the policy benefits and in denying defendant's motion for judgment n.o.v. for the reason that the uncontroverted evidence, including plaintiff's own evidence, and the documentary evidence which plaintiff admits to be true, leads to only one possible conclusion: That the insured suffered from and later died from severe heart disease which he knowingly did not disclose in his application for the life insurance, and the court should have, as a matter of law, upheld the defense of misrepresentation.

Plaintiff's evidence established that in 1979 her husband worked for the Arthur Morgan Company. Stephen Littlefield, who was a salesman for the defendant and a son and brother-in-law of the owners of

Arthur Morgan,[1] testified that he approached his brother-in-law in August 1979 in order to sell a payroll deduction life insurance program to Arthur Morgan employees. Littlefield's brother-in-law, Ron Morgan, set him up in an office on the company premises where Littlefield personally took applications for insurance. Littlefield spoke with approximately 25 employees and took applications from 13 employees, including decedent. Littlefield asked Peete the questions on the application and wrote in his answers. A policy was issued to Peete in 1979, and he died in December 1980. A claim was made under the policy, but was not paid. On cross-examination, Littlefield testified that when he filled in Peete's application, Peete was asked, "Has the proposed insured ... ever had heart trouble ...?" Peete responded, "No." When asked if he had been hospitalized during the past five years, Peete indicated he had been hospitalized and treated for pneumonia by Dr. Banton in approximately 1976.

Plaintiff also introduced into evidence a "Statement of Medical Consultation or Treatment" signed by Peete's physician, Dr. M.R. Banton, and dated February 23, 1981. The statement indicated in pertinent part that Peete was hospitalized for ten days in 1977 for two viral muscular problems and a myocardial infarction.

Defendant's first witness was Stephen Pieper, the company's district manager who was present when Peete applied for insurance. He corroborated Littlefield's testimony regarding the application process, and explained the policy's two-year contestability clause allowing the company to contest a claim made within two years of the application for insurance.

Defendant next presented Dr. M.R. Banton's videotaped deposition. She testified regarding her treatment of Peete's heart condition. She further testified that although she told Peete of his heart condition, he still may not have been aware of it. The relevant portion of her testimony follows:

Q. And based on the experience you had with Charlie Peete and based on the contact that you had with him over that period of two years, why did you contact his employer?

A. Mr. Peete impressed me as a very hard working gentleman. He did not feel any pain.

I really do not think I was registering with him with what I'm saying, that just telling him "Look, you've had this heart problem ... and I don't think you're ready to do all that."

But as far as he was concerned, he felt fine. He did not see any reason why he cannot work.

She further testified that she directly informed his employer of his condition at Peete's request. Defendant's final witness was Richard Knudsen, a company underwriter who testified that the company would not have issued the policy had it known of Peete's heart condition. Knudsen also stated that Dr. Banton was not contacted regarding the decedent's health. Defendant also introduced into evidence the insurance policy; the application for insurance; the death certificate indicating cause of death as heart disease; and the hospital records indicating Peete's heart-related hospitalizations. The insurance application showed that "no" had been checked after a question regarding heart trouble, and "yes" after a question regarding hospitalization. These answers were further explained in the space provided for "remarks", where "Pneumonia—1976?", followed by Dr. Banton's name and address, were written.

At the close of all evidence, the insurance company moved for a directed verdict, claiming it had unassailably proven its affirmative defense. As grounds for its motion, the company states, in relevant part:

1. The named insured, Charlie R. Peete, had been hospitalized and treated for serious heart disease for approximately two years prior to his application for insurance on June 18, 1979.

1. He testified that Arthur Morgan Co. was his father's and brother-in-law's company.

2. In applying for this insurance Charlie R. Peete misrepresented that he had not previously had heart trouble intending that defendant rely upon said representation in issuing the policy....

The court denied the motion, ruling that there were factual issues for the jury, primarily as to whether the insured knew the representation was false and whether he intended that the company rely on the representation. After the jury returned a verdict for plaintiff, the court also denied the company's motion for judgment n.o.v.

■■■■ A directed verdict is a drastic action and should be granted only if reasonable and honest men could not differ on the disposition of a case. *Jarrell v. Fort Worth Steel and Manufacturing Co.*, 666 S.W.2d 828, 833 (Mo.App.1984). In passing upon a motion for a directed verdict, the reviewing court must give plaintiff the most favorable view of all the evidence and the benefit of all favorable inferences to be drawn therefrom. The general rule is that when a plaintiff makes out a prima facie case, it should not be taken from the jury, for the plaintiff has the right to have the jury pass on the credibility of the defendant's witnesses and the weight of their testimony. *Boyle v. Colonial Life Ins. Co. of America*, 525 S.W.2d 811, 814 (Mo.App. 1975). There is an exception to the general rule if the defendant asserts an affirmative defense which is established by documentary evidence, by plaintiff's own evidence, by evidence which plaintiff admits to be true, or if there is only one possible conclusion under the facts and the law. *Id.* at 815; *Kauble v. MFA Mutual Ins. Co.*, 637 S.W.2d 831, 833 (Mo.App.1982). Defendant has the burden of proving its affirmative defense. *Smith v. Prudential Ins. Co. of America*, 300 S.W.2d 435, 440 (Mo.1957).

■■■ In the case at bar, plaintiff clearly made a prima facie case. As presented in the defendant's verdict directing instruction based on MAI 32.19, the six elements of the affirmative defense of material misrepresentation are:

FIRST, decedent represented in the application for the policy that he had not ever had heart trouble, and

SECOND, decedent intended that defendant rely upon the representation in issuing that policy, and

THIRD, the representation was false, and

FOURTH, decedent knew the representation was false, and

FIFTH, defendant relied on the representation in issuing the policy, and

SIXTH, such heart trouble contributed to the death of the decedent.

Plaintiff's own evidence established that Peete had heart trouble before he applied for insurance and the insurance application established he represented that he did not have heart trouble.[2] The death certificate established that heart trouble contributed to the decedent's death. Consequently, elements one, three and six were clearly established.

However, we believe the trial court correctly denied defendant's motion for a directed verdict because there was a jury question on at least two of the elements of the affirmative defense of material misrepresentation. The second element required that defendant prove that "decedent intended that defendant rely upon the representation in issuing the policy." There was no testimony that Peete was told the defendant would rely on the representation in the policy nor did the application itself state defendant would rely on the representations. While no doubt the evidence presented could support a finding on this element in defendant's favor, we do not believe under the circumstances of this case, as a matter of law, the jury could not find in favor of plaintiff. Plaintiff is entitled to the most favorable view of the evidence and reasonable inferences to be drawn therefrom. Decedent disclosed the name of his doctor and he knew that his

---

**2.** However, it could be argued that the question mark after "Pneumonia—1976?" in the "remarks" box on the application form indicates some uncertainty either as to the date or nature of his illness.

doctor had spoken to his employer regarding the state of his health. In light of the close family relationship between defendant's agent, Stephen Littlefield, and decedent's employer, it may be that in these circumstances the decedent assumed Littlefield knew his health condition, or that his employer or doctor or both would be contacted regarding his health. Any minimal inquiry to either would have disclosed the heart problem. While defendant may have been under no obligation to contact either party, in the circumstances of this case, we believe the extent, if any, to which plaintiff intended that defendant rely on the representations in the application was for the jury.

Moreover, the third element of the verdict director required that the decedent knew the representation in the application was false. Plaintiff asserts that the evidence on this made for a jury issue. Defendant cites *Goodwin v. Kansas City Life Insurance Co.*, 279 S.W.2d 542 (Mo.App. 1955) (overruled on other grounds in *Baugh v. Life and Casualty Insurance Co. of Tennessee*, 307 S.W.2d 660 (Mo. 1957)), for the proposition that one does not forget the fact that he had suffered from a serious disease, particularly when it has caused hospitalization. We do not read *Goodwin* so broadly. There, the insured had been hospitalized for testicular cancer and had his only descended testicle surgically removed. He had reported that fact to his doctor less than four months before applying for life insurance. Yet on his application he denied ever having been hospitalized or ever having undergone surgery of any kind. In holding that knowledge element of the insurance company's affirmative defense had been proven, the *Goodwin* court emphasized that insured had to have known that his testicle had been surgically removed and that he afterwards suffered from severe pain for many years.

Here, on the other hand, Dr. Banton testified that Peete felt no pain and no surgery was performed. She further testified that when she told him he had a "heart problem" and could not work as hard as he had, she did not think it registered with him. From this testimony, the jury could have concluded that the doctor did not think Peete understood he had a heart problem. In these circumstances, this created a jury issue as to whether Peete knew his representation on the application was false.

Affirmed.

DOWD and CRANDALL, JJ., concur.