**MAC–FAB PRODUCTS, INC.,**
**Plaintiff-Respondent,**

v.

**BI–STATE DEVELOPMENT AGENCY OF the MISSOURI–ILLINOIS METRO-POLITAN DISTRICT, Defendant, Third-Party Plaintiff-Appellant,**

v.

**HERCULES CONSTRUCTION COMPA-NY, Third-Party Defendant, Third-Party Plaintiff,**

**Atlas Iron Works, Inc., Third-Party Defendant.**

**No. 50833.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 24, 1987.

Motion for Rehearing and/or Transfer Denied March 25, 1987.

Amy Rehm Hinderer, St. Louis, for defendant, third-party plaintiff-appellant.

Edwin D. Akers, Clayton, Jay Lewis Levitch, St. Louis, and Richard Scott Bender, Clayton, for plaintiff-respondent.

DOWD, Judge.

Defendant/third-party plaintiff, Bi-State Development Agency of the Missouri-Illinois Metropolitan District (Bi-State), appeals from a judgment entered on a jury verdict which awarded the plaintiff, Mac-Fab Products, Inc. (Mac-Fab), $102,454.00 on a breach of contract claim. Bi-State also appeals from a directed verdict in favor of third-party defendant/third-party plaintiff, Hercules Construction Company (Hercules). We affirm.

A jury could reasonably have found the following. Bi-State constructed its Brentwood Station Garage in 1981 and 1982. McBros/Fleming (not a party) contracted to perform management services and Hercules contracted to perform as the general contractor for the Structural Building Frame phase. Hercules subcontracted most of its work to third-party defendant, Atlas Iron Works, Inc. (Atlas). The structural phase included the manufacture, delivery, installation, and touch-up painting of the metal roof decking. The garage roof covered approximately six acres and required approximately 2800 squares of metal decking. The underside of the decking was to be painted with two coats of finish paint after the installation and would serve as the ceiling for the garage portion of the building.

Bi-State issued a purchase order for the decking in August, 1981 in the amount of $207,000.00. Bi-State purchased the decking directly from Mac-Fab in order to take advantage of Bi-State's tax-exempt status. Hercules' contract was then reduced by the amount of the taxes. The Mac-Fab invoices, however, were sent to Atlas who submitted them to Bi-State with the monthly pay requests.

Mac-Fab manufactured the decking between April 8, 1982 and April 23, 1982. The specifications required that the metal be chemically cleaned, treated with phosphate, and treated with a primer coat of rust inhibitive paint. The primer was designed to "protect the steel for only a short period of exposure in ordinary atmospheric conditions and shall be considered as an impermanent and provisional coating." Once the manufacturing process was completed, the decking was stored at Mac-Fab until delivery to the site was requested. All of the decking was delivered to the site between April 12, 1982 and May 19, 1982 with the exception of eight pieces that were delivered on June 21, 1982. The storage

specifications required that the decking be stored off the ground with one end elevated and that a protective, waterproof covering be placed over the decking. The cover was to be ventilated to avoid condensation. The decking was installed on the superstructure between April 22, 1982 and June 30, 1982.

A notice to proceed with the painting was sent to Joseph A. Ward Painting Co. (Ward), the painting subcontractor for the underside of the deck (also not a party), on May 24, 1982. Ward, according to the terms of the contract, inspected the site and notified McBros/Fleming by letter dated June 4, 1982 that Ward would be unable to proceed due in part, to large areas of rust on the underside of the deck. The letter also stated there was not yet a floor upon which to put a rolling scaffold and that Ward would be unable to prevent dust and dirt from blowing onto the fresh paint. There was a severe winter and an unusually wet spring in 1982 and the site conditions were generally poor.

On June 15, 1982 a meeting was held which representatives of McBros/Fleming, Hercules, Atlas, and Mac-Fab attended. The notes of the meeting reflect that 75% of the decking had rusted. Mac-Fab suggested that the paint be put on over the rust but Bi-State rejected the idea. In a letter dated June 24, 1982 Hercules wrote to McBros/Fleming requesting that direct payments to Mac-Fab be withheld until the problem with the rust was resolved. The decking continued to deteriorate over the summer and another meeting was held on September 20, 1982. Mac-Fab suggested that Ward put on another coat of primer over the rust and then only one finish coat. Mac-Fab offered to pay the difference in cost. This suggestion was also rejected and Bi-State directed McBros/Fleming to hire an independent testing laboratory to determine the cause of the rust. A technician for Industrial Testing Laboratories, Inc. (ITL) took samples of the rust and primer. ITL issued a report which indicated the rust was caused by a dirty substrate condition before the application of the primer. In late September, 1982 Bi-State had the rusted decking sandblasted

and reprimed at a cost of $102,454.00. Bi-State withheld this amount from the payment to Mac-Fab on the original purchase price of $207,000.00. Hercules was issued a certificate of substantial completion and was paid in full.

Mac-Fab then brought an action for breach of contract against Bi-State who, in turn, filed a third-party petition against Hercules who, in turn, filed a third-party petition against Atlas. At trial Mac-Fab maintained the decking was manufactured according to the specifications and that the rust was caused by improper storage and installation at the site. Bi-State maintained the rust was the result of improper manufacture. At the close of Bi-State's case the trial court granted motions by both Hercules and Atlas for a directed verdict. The claim between Mac-Fab and Bi-State was presented to the jury, which returned a verdict in favor of Mac-Fab in the amount of $102,454.00. Bi-State appeals from the verdict in favor of Mac-Fab and from the directed verdict in favor of Hercules. Atlas filed a motion to be dismissed from the appeal as Hercules failed to appeal the directed verdict in favor of Atlas on Hercules' third-party petition.

Bi-State raises the following points on appeal: (1) There is no substantial evidence to support the verdict in favor of Mac-Fab; (2) The trial court erred in failing to direct a verdict in favor of Bi-State in that Mac-Fab failed to establish that its decking met the specifications; (3) The trial court erred in allowing evidence of the site after June 1982 in that it was immaterial, irrelevant, and prejudicial; and (4) The trial court erred in directing a verdict in favor of Hercules in that sufficient evidence was produced to prove all of the elements of Bi-State's claim against Hercules.

■ Bi-State's first two points address the sufficiency of the evidence presented by Mac-Fab. Evidence was presented at trial that Bi-State ordered the decking, that Mac-Fab manufactured it according to specifications, and that it was delivered to the job site. Bi-State's contentions that the decking did not conform to the specifica-

tions address the credibility and weight of the testimony and are properly a question for the jury. "It is only when there is a complete absence of probative fact to support a verdict that an appellate court will interfere." *Lauber v. Buck,* 615 S.W.2d 89, 91 (Mo.App.1981). We find there is substantial evidence to support the verdict and that it was not error for the trial court to refuse to direct a verdict in favor of Bi-State on Mac-Fab's claim. Points one and two are denied.

Bi-State contends in its third point the trial court erred in admitting photographs of the site taken after June 1982 which showed the condition of the site after a rainfall. Bi-State contends the photographs are irrelevant and immaterial because the rust was detected by late May or early June and the muddy condition of the site in June was not representative of the site during construction.

■ The fact that a photograph of a location was taken before or after changes have occurred does not make the photograph inadmissible if the changes are explained. *State Highway Commission v. Eilers,* 406 S.W.2d 567, 571 (Mo.1966). It is for the jury to assess the proper weight to be given the photographs. *Id.* Admission or rejection of a photograph is a matter of trial court discretion and its ruling will not be disturbed on appeal absent an abuse of that discretion. *Long v. Hooker,* 443 S.W.2d 178, 181 (Mo.1969). An abuse of discretion is "a judicial act which is untenable and clearly against reason and which works an injustice." *State v. Stubenrouch,* 499 S.W.2d 824, 826 (Mo.App. 1973).

■ Other photographs of the site, taken before June 1982, were also admitted into evidence. There was testimony of unusually wet site conditions in the spring and summer of 1982. The significance to be accorded the photographs taken after June 1982 was for jury to determine and thus, we do not find the trial court abused its discretion in allowing the photographs to be admitted. Point denied.

Bi-State contends in its final point the trial court erred in directing a verdict in favor of Hercules on Bi-State's third-party petition because sufficient evidence was produced to prove all of the essential elements of Bi-State's cause of action. In its third-party petition Bi-State alleges Hercules was in breach of contract because (1) The decking materials supplied by Mac-Fab did not meet the specifications;[1] (2) The decking materials did not conform to the requirements of the contract (as required by the general warranty clause of the contract between Bi-State and Hercules); and (3) Hercules neglected to properly store the decking materials prior to installation. The third allegation is submitted on appeal in the alternative as either a contract or negligence claim. Bi-State further contends on appeal Hercules was either in breach of contract or negligent in failing to timely install the decking and for failing to perform touch-up painting.

We note at the outset that Hercules requested the trial court to instruct the jury that evidence presented by Mac-Fab was applicable only to Mac-Fab's claim against Bi-State. Hercules' request was denied and the trial court stated that any evidence received was to be considered with respect to any relevant claim. There was, however, some evidence admitted as admissions against Bi-State and the trial court admonished the jury, after objections by both Hercules and Atlas, that the evidence contained in the admissions could not be considered against Hercules and Atlas. We are therefore precluded from considering any evidence contained in the admissions as to Bi-State's third-party petition against Hercules.

Bi-State admitted into evidence the contract between Bi-State and Hercules which incorporated the Project Manual admitted previously by Mac-Fab. Hercules does not deny the contract but rather contends Bi-State is in error regarding its allegations of Hercules' responsibility under the contract. Bi-State maintains that Hercules is respon-

---

1. Bi-State's position is that Hercules, as general contractor for the structural steel, retains re- sponsibility for the fabrication of the metal decking.

sible for the manufacture, storage, installation, and touch-up painting of the metal decking. Hercules does not deny responsibility for the storage, installation, and touch-up painting, but rather contends there was no evidence presented to support an allegation that Hercules' performance constituted a breach of contract or negligence. As to the manufacture of the decking, Hercules contends the responsibility for the manufacture was taken out of the contract because Bi-State purchased the decking directly from Mac-Fab and thus, Bi-State clearly understood it would be Mac-Fab's responsibility.

While the language of the contract appears to refute this contention,[2] it is not necessary to our determination of the issue whether the manufacture of the decking remained the responsibility of Hercules because the jury, as indicated by its verdict, found the decking conformed to specifications. Because the jury rejected Bi-State's claim that the decking was improperly manufactured, we fail to perceive any prejudice to Bi-State in the trial court's direction of the verdict as to the first two counts of their petition. In their first two counts Bi-State attempted to impose liability on Hercules for allegedly defective materials manufactured by Mac-Fab. Because Mac-Fab was exonerated the obvious result is that Hercules would have been exonerated as well.

As to Bi-State's remaining contentions, that Hercules did not properly store or install the decking and failed to perform the touch-up painting, the issue is whether Bi-State made a submissible case that would render the trial court's direction of a verdict in favor of Hercules in error.

A directed verdict is a drastic action and should be granted only if there is no room for reasonable minds to differ. *Peete v.*

*Equitable Life Assur. Soc. of U.S.*, 697 S.W.2d 232, 235 (Mo.App.1985). In determining whether a submissible case is made we consider the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *Rustici v. Weidemeyer*, 673 S.W.2d 762, 765 (Mo. banc 1984). Inferences must be reasonably probable without resort to guesswork or speculation. *Patterson v. Foster Forbes Glass*, 674 S.W.2d 599, 603 (Mo.App.1984). The general rule is that when a plaintiff makes a prima facie case, it should be presented to the jury, for the plaintiff has the right to have the jury pass on the credibility and the weight of the witnesses' testimony. *Peete, supra.*

Bi-State contends it made a submissible case of breach of contract. To state a cause of action *ex contractu* the plaintiff must allege the following: (1) the making and existence of a valid and enforceable contract between plaintiff and defendant; (2) the right of plaintiff and the obligation of defendant thereunder; (3) a violation thereof by defendant; and (4) damage resulting to plaintiff from the breach. *U.S. Suzuki Motor Corp v. Johnson*, 673 S.W.2d 105, 106 (Mo.App.1984). To make a submissible case, each and every element essential to liability must be predicated upon legal and substantial evidence. *Shackelford v. West Central Elec. Co-op., Inc.*, 674 S.W.2d 58, 63 (Mo.App. 1984).

The making and existence of a valid and enforceable contract is not in dispute in this case. The issues surrounding the submissibility of Bi-State's case address the latter three requirements. As to the allegation of improper storage, the specifications require the decking to be covered and elevated. Bi-State, in its brief, refers us to

---

**2.** Section 4.6.1 of the Supplementary General Conditions provides, inter alia,

The owner shall have the option of purchasing all or any portion of the materials and equipment included in each contract directly from the manufacturer or supplier in accordance with the following procedure: .... 3 Nothing in this paragraph is intended or shall be construed as relieving the Contractor from his contractual obligations and the Contractor

shall have full continuing responsibility to expedite and ensure delivery as required. He shall install the materials and equipment purchased in accordance with the provisions of Contract Documents, protect and maintain them in proper condition, and repair, replace and make good any damage thereto without cost to the owner until such time as the work covered by the contract has been accepted by the Owner.

testimony that the decking was not covered and elevated when stored at the site and thus, makes a showing that Hercules was obligated to properly store the material and failed to do so. Bi-State also contends that the damage requirement was sufficiently proved because it was clearly shown the decking rusted and required corrective work in the amount of $102,454.00.

■ There is, however, an additional element of causation in the fourth requirement which Bi-State failed to prove. All four of the requirements must be proved in order to make a submissible case. Bi-State proved damages but failed to prove the damages resulted from the breach. The testimony Bi-State refers us to states only that the decking was stored contrary to specifications. Bi-State does not refer us to any direct testimony of causation or even refer us to testimony from which it could reasonably be inferred the rust was caused by improper storage.

As to the allegation of untimely installation, Bi-State failed to produce any evidence as to what Hercules' obligations were under the contract. Although some evidence was presented that there was an insufficient number of tinners[3] at the site, Bi-State failed to produce any evidence of when the installation was to be completed under the contract or how many tinners were expected per day. Without evidence of Hercules' obligation there can be no submissible case as to a violation of that duty. Also, Bi-State again fails to make a submissible case as to the damage requirement. There is no evidence that a failure to timely install caused the rust.

■ As to the allegation of failure to perform touch-up painting, Bi-State failed to produce any evidence that the corrective work was within the realm of touch-up painting. Rather, the uncontradicted evidence is that touch-up painting refers to correcting paint burns from welding, scratches from delivery, or small areas of rust. Hercules admits that it is responsible for the touch-up painting but denies that

the extensive corrective work required in this case is touch-up painting. We agree.

Therefore, considering the evidence in the light most favorable to the verdict, we are persuaded Bi-State failed to make a submissible case of breach of contract and that the trial court was not in error in directing a verdict in favor of Hercules.

■ Bi-State contends in the alternative it made a submissible case of negligence based on the same allegations that Hercules failed to properly store and install the decking and failed to perform touch-up painting. To state a cause of action in negligence the plaintiff must allege the following: (1) the existence of a duty on the part of the defendant which is owed to the plaintiff; (2) the failure of the defendant to perform that duty; and (3) an injury to the plaintiff resulting from such failure (proximate cause). *St. John Bank & Trust Co. v. City of St. John*, 679 S.W.2d 399, 401 (Mo.App.1984). Again, "the case is not to be submitted unless each and every fact essential to liability is predicated upon legal and substantial evidence." *Probst v. Seyer*, 353 S.W.2d 798, 802 (Mo.1962).

■ Mere breach of a contract is not recognized as a basis for tort liability, however, the complained of act or omission which breaches a contract may give rise to a liability in tort. *American Mort. Inv. Co. v. Hardin-Stockton*, 671 S.W.2d 283, 293 (Mo.App.1984). In that instance it is the act and not the breach that serves as a basis for liability in tort. *Id.* Factual circumstances peculiar to a particular case dictate which acts or omissions may be required under the standard of reasonable care. *Id.*

■ There is not sufficient evidence in the record to determine which acts or omissions might constitute reasonable care under the circumstances. Our only reference point is that of Hercules' obligations under the contract and we have previously stated that a mere breach does not give rise to liability in tort.

Moreover, the same deficiencies that preclude us from finding Bi-State made a sub-

3. Installers of metal deck are referred to in the industry as tinners.

missible claim as to breach of contract defeat the negligence claim. As to the allegations of improper storage, there was no evidence presented that improper storage was the proximate cause of the rust. As to the allegations of improper installation, no evidence was presented as to the extent of Hercules' obligation and no evidence was presented that improper installation was the cause of the rust. As to the allegation of failure to perform touch-up painting, we have already concluded the removal of the rust cannot reasonably be considered touch-up painting.

Again, considering the evidence in the light most favorable to the verdict, we are persuaded Bi-State failed to make a submissible case of negligence and that the trial court was not in error in directing a verdict in favor of Hercules. Point denied.

Because we find no error in the direction of a verdict in favor of Hercules, the motion by Atlas to be dismissed from this appeal is denied as moot.

Judgment affirmed.

SMITH, P.J., and REINHARD, J., concur.