**Morris S. FARER and Denise Farer, Plaintiffs-Appellants,**

**v.**

**Barbara A. BENTON, d/b/a Babs Roofing Service Co., Defendant-Respondent.**

**No. 51844.**

Missouri Court of Appeals, Eastern District, Division One.

Oct. 27, 1987.

Rehearing Denied Dec. 2, 1987.

Irvin A. Friedman, D. Eric Sowers, Elaine E. Bensavage, St. Louis, for plaintiffs-appellants.

R.C. Wuestling, St. Louis, for defendant-respondent.

REINHARD, Judge.

Plaintiffs appeal from the trial court's order directing a verdict in favor of defendant at the close of plaintiffs' evidence. We reverse and remand.

Plaintiffs owned and operated a shoe store in a building they owned. Defendant repaired the roof of the building. In this action plaintiffs seek damages alleging defendant's faulty repair work resulted in water damage to their merchandise and building following a 1982 rainstorm.

Plaintiffs' evidence about liability consisted of testimony from a roofing expert. We believe plaintiffs made a submissible case on liability, and, in fact, this does not appear to be an issue on appeal. Both parties agree that the basis for the trial court's ruling on defendant's directed verdict motion was that plaintiffs did not "make a submissible case on the issue of damages."

Plaintiffs' evidence about damages came from the testimony of Morris Farer. He stated that he and his wife owned and operated the shoe store from 1978 to 1982 and during that period he personally bought all of the store's inventory of shoes, some 3,000 to 4,000 pairs a year. Prior to the Farers' purchase of the shoe store, Morris Farer had sold shoes for two retailers for 23 years. He testified that the water "ruined" the entire inventory of shoes; some were completely soaked, others damaged by mildew. He said he gave $7,882.00 worth of completely soaked shoes to charity; $2,088.00 of that total to the Salvation Army and $5,794.00 to Hadassah. He testified there were "approximately 3,800 pairs" of shoes in the store at the time of the rainstorm and that he sold "three thousand pair" to a liquidator for $9,000.00.

Concerning the method by which he calculated the value of the shoes he donated to the Salvation Army, Farer stated, "We took the shoes—and most of those were children's shoes. And from my experience, the average price for those particular shoes [was] about $6.00 a pair." He said the $6.00 figure was his cost, the wholesale price. The court would not permit additional testimony by Farer about the value of the shoes he donated to Hadassah nor would it permit him to testify about the value of the entire inventory prior to the damage. During an offer of proof, plaintiffs' counsel told the trial court that "there are no invoices in existence for these shoes."

On appeal, plaintiffs contend the trial court erred in directing a verdict. We agree. A directed verdict is a drastic action that should be granted only if reasonable and honest persons could not differ on the disposition of the case. In reviewing a directed verdict, the appellate court must give the plaintiff the most favorable view of all the evidence and the benefit of all favorable inferences to be drawn from the evidence. *Peete v. Equitable Life Assurance Society of the United States*, 697 S.W.2d 232, 235 (Mo.App.1985).

When an actionable injury is shown by the evidence, a plaintiff has a right to damages. Assuming the evidence is not sufficient to provide a basis for calculation of actual damages, a plaintiff is entitled to nominal damages. *Johnson v. Summers*, 608 S.W.2d 574, 575 (Mo.App.1980). The amount of damages, including nominal damages, is for the trier of fact to determine. *Haith v. Model Cities Health Corp.*, 704 S.W.2d 684, 689 (Mo.App.1986). Therefore, when a plaintiff shows there are damages, a trial court should not direct a verdict for the defendant. *Auffenberg v. Hafley*, 457 S.W.2d 929, 939 (Mo.App.1970).

Here, Morris Farer's testimony that the inventory of about 3,800 pairs of shoes was "ruined" by water or mildew was sufficient to overcome a motion for directed verdict on the issue of damages, and on that ground alone we reverse and remand. We note, however, that at trial this case involved considerable controversy concerning proof of plaintiffs' loss and the proper measure of damages. Because of our disposition of this case we need not rule on plaintiffs' evidentiary complaints; however, because these issues might arise anew on retrial, we believe the following should be instructive.

An owner may testify, without further qualification, about the reasonable market value of his personal property that has been damaged or destroyed. *DeWitt v. American Family Mutual Insurance Co.,* 667 S.W.2d 700, 708 (Mo. banc 1984). This rule applies to the owner or operator of a business who testifies about the value of a stock of merchandise. *Still v. Travelers Indemnity Co.,* 374 S.W.2d 95, 102 (Mo. 1963). Value may be established by the owner's or operator's testimony; invoices or other documents are not required. *Id.; See also Harris v. A.P. Nichols Inv. Co.,* 25 S.W.2d 484, 488 (Mo.App.1930); *Cothren v. Kansas City Laundry Service Co.,* 242 S.W. 167, 167–68 (Mo.App.1922). The weight and value of the testimony is for the jury to determine. *Barber v. M.F.A. Milling Co.,* 536 S.W.2d 208, 211 (Mo.App.1976).

Here, Morris Farer was owner and operator of the shoe store. He possessed more than 25 years' experience as a shoe salesman, including four years during which he purchased all of the shoe store's stock of merchandise. The value and weight of his testimony in light of his failure to produce invoices was a matter for the jury to consider.

Concerning the proper measure of damages, we said in *Stark Bro's. Nurseries & Orchards Co. v. Wayne Daniel Truck, Inc.,*

> Where property is destroyed by tortious act the owner is entitled to its monetary equivalent so as to be placed into as good a position as he would have enjoyed in the absence of the destruction.... In determining market value the usual rule is that merchandise which is utilized as stock by the owner is not valued at its retail price but on the basis of replacement cost.... Where replacement can be effectuated the owner of the property is fully compensated upon receipt of the expenses of replacement.

718 S.W.2d 204, 205–06 (Mo.App.1986).

Here, plaintiffs' damaged property was a stock of merchandise held for resale. The measure of damages would be the difference between the wholesale market value of the merchandise after the loss or destruction and the wholesale market value, plus delivery costs, immediately prior to the loss or destruction. *See Chevron Chemical Co. v. Streett Industries, Inc.,* 534 F.Supp. 801 (E.D.Mo.1982), *cited in Stark Bro's. Nurseries & Orchards Co.,* 718 S.W.2d at 206.

Reversed and remanded for a new trial.

GARY M. GAERTNER, P.J., and CRIST, J., concur.