**CHASE ELECTRIC COMPANY, Plaintiff–Appellant,**

v.

**The ACME BATTERY MANUFACTURING COMPANY, et al., Defendant–Respondent.**

**No. 57927.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 23, 1990.

George A. Uhl, Steven M. Cockriel, Herbert J. Wedemeier, St. Louis, for plaintiff-appellant.

David M. Nissenholtz, St. Louis, for defendant-respondent.

STEPHAN, Judge.

Plaintiff, Chase Electric Company ("Chase.") filed a three count action against defendant, The Acme Battery Manufacturing Company ("Acme"), seeking recovery for breach of contract, in quantum meruit and for misrepresentation. All three counts arose from electrical work Chase performed at Acme's plant pursuant to a contract between Chase and Acme. Acme filed a motion to dismiss Chase's petition for failure to state a claim upon which relief could be granted. The trial court initially sustained this motion. It later revised this order in accordance with Rule 74.01 and entered a final judgment against Chase. Chase appeals from both the order and the judgment. We reverse and remand for further proceedings.

The averments in Count I of Chase's petition include the following facts. In or around November, 1987, Acme solicited electrical contractors for the remodeling of its facility located at 3340 Morganford Road in St. Louis. Chase alleges that, in connection with the proposed remodeling, Acme made the following representations, agreements, warranties and promises: (1) that Acme would not begin full production work at its plant until March 1, 1988; (2) that until March 1, 1988, the only production work at Acme's plant would be by the third shift of lead plate manufacturing; and (3) that no production work of any kind would take place during the times that Chase would be working. Chase further alleges that in reliance upon the foregoing representations, agreements, warranties and promises, and the implied covenant of Acme not to delay, disrupt, hinder or interfere with Chase's performance of its work, Chase prepared its bid for work. Chase contends that after Acme accepted Chase's bid, it entered into a contract with Chase in or around December, 1987. Chase asserts that pursuant to the oral representations, agreements, warranties, promises and contract documents, Chase agreed to perform electrical installation work. Chase contends that in exchange for its performance, Acme agreed to pay Chase's cost of performance of the work, plus a fixed fee of $18,074, with a guaranteed maximum price of $150,831.

Chase asserts that it furnished work, labor and materials for the electrical installation work. Chase argues that Acme materially breached its contract with Chase by: (1) beginning full production work at its plant on February 1, 1988; (2) employing all three shifts of plant workers for lead plate manufacturing, along with related wet charge activities; (3) employing the third shift of pasting process, which left water standing in the pasting area for up to one hour at the start of the electricians' day; and (4) engaging a non-union contractor, over Chase's objections and during the period when Chase was on the site, despite the fact that Acme knew Chase was a union contractor. Chase asserts that these breaches unduly delayed, disrupted, hindered and interfered with Chase's performance of its work. Chase further asserts that this caused it to perform its work out of sequence and under awkward, overcrowded, disruptive, piecemeal and hazardous conditions, which resulted in damages to Chase. Chase alleges that its damages

and reasonable cost of performance of the work plus the fixed fee exceeded the guaranteed maximum price for the project. Chase states that the reasonable value of its work, labor and materials under the actual conditions encountered totals $217,-037.17. Chase additionally states that the prices charged for its work were and are reasonable, and, after allowing Acme credit and setoffs, Acme still owes Chase $48,-844.10 plus interest and costs.

Chase contends that it began demanding payment from Acme on March 16, 1988; however, despite each demand, Acme failed and refused to pay. Therefore, on September 21, 1988 Chase instituted suit against Acme. In Count I, Chase sought: (1) $48,-844.10 in damages for breach of contract; and (2) a special judgment and decree of a mechanic's lien against property owned by Acme in order to secure payment of any judgment against Acme. Chase named several other parties in Count I due to their alleged interest in Acme's property.

In Count II, pleading in the alternative, Chase seeks recovery against Acme in quantum meruit. Chase makes the following allegations. First, both Chase's acts and conduct and Acme's acts and conduct were positive, unequivocal and inconsistent with an intent to be bound by their contract, resulting in an express mutual consent or an implied consent through the actions of the parties to abandon the contract. Second, this abandonment entitles Chase to recover the reasonable value of its work, labor and materials. Third, from December 1, 1987 through March 25, 1988, at the request of Acme, Chase performed valuable services and supplied valuable material and labor having a reasonable value of $217,037.71. Fourth, the work Chase performed was for Acme's use and benefit, and Acme accepted the work, labor and material from Chase. Fifth, Acme paid Chase the sum of $168,193.61, but has failed and refused to pay the $48,844.10 balance due and owing to Chase. Sixth, this failure results in Acme's unjust enrichment. Therefore, Chase seeks $48,844.10.

Finally, and again pleading in the alternative, Chase's third count seeks damages for misrepresentation. Using the same factual support as Count I, Chase alleges that prior to entering the contract with Acme, Acme made three oral representations to Chase: (1) that Acme would not begin full production work at its plant until March 1, 1988; (2) that until March 1, 1988, the only production work at Acme's plant would be by the third shift of lead plate manufacturing; and (3) that no production work of any kind would take place during the times that Chase would be working. Chase contends that such representations were false since Acme began full production work on February 1, 1988. Chase further contends that Acme knew its representations were false, or, alternatively, that Acme recklessly and negligently made such representations to Chase without knowledge of their truth or falsity. Chase additionally alleges: (1) such representations were intended to induce Chase to enter into the contract with Acme; (2) such representations were material to the contract between Acme and Chase; (3) Chase reasonably and rightfully relied upon such representation by Acme when it entered into the contract with Acme; (4) Chase was ignorant of the falsity of such representations until approximately February 1, 1988; and (5) such representations were the proximate cause of damage to Chase in the amount of $48,844.10.

On June 19, 1989, Acme filed a motion to dismiss Chase's petition for failure to state a claim upon which relief could be granted. On December 18, 1989, the Honorable Evelyn M. Baker sustained Acme's motion to dismiss as to all three counts. On January 5, 1990, the Honorable Robert H. Dierker revised the December 18, 1989 order in accordance with Rule 74.01 and entered final judgment against Chase. Chase appeals from both the December 18, 1989 order and from the January 5, 1990 judgment.

 Where a trial court asserts no reason for dismissal, we assume it acted for the reasons offered in the motion to dismiss. *Shockley v. Harry Sander Realty Co.*, 771 S.W.2d 922, 924 (Mo.App.1989). In reviewing a dismissal for failure to state

a claim upon which relief can be granted, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to plaintiffs, the averments invoke substantive principles of law entitling plaintiff to relief. *Lowrey v. Horvath,* 689 S.W.2d 625, 626 (Mo. banc 1985). A petition need only allege ultimate facts, not the facts or circumstances by which the ultimate facts will be established. *Scheibel v. Hillis,* 531 S.W.2d 285, 290 (Mo. banc 1976). Furthermore, an appellate court may draw those reasonable inferences fairly deducible from the facts stated in the petition. *Stiffelman v. Abrams,* 655 S.W.2d 522, 525 (Mo. banc 1983). With these widely accepted principles in mind, we review the dismissal of each of Chase's counts separately.

### Count I

On appeal, Chase argues that it sufficiently pleads a cause of action for breach of contract. We agree. To state a cause of action for breach of contract, the plaintiff must allege the following: (1) the making and existence of a valid and enforceable contract between plaintiff and defendant; (2) the right of plaintiff and the obligation of defendant thereunder; (3) a violation thereof by defendant; and (4) damages resulting to plaintiff from the breach. *Mac-Fab Products v. Bi–State Dev. Agency,* 726 S.W.2d 815, 819 (Mo.App.1987); *U.S. Suzuki Motor Corp. v. Johnson,* 673 S.W.2d 105, 106 (Mo.App.1984).

At the outset, we note that although both Chase and Acme admit that a contract exists between them, neither Chase nor Acme indicates the content of their agreement. Chase does allege, however, that it agreed to perform electrical installation work in accordance with Acme's oral representations, agreements, warranties, promises and documents. Therefore, allowing Chase's pleadings their broadest intendment, we conclude that Chase alleges its contract with Acme includes both oral and written terms. With this in mind, we address each element of Chase's cause of action for breach of contract separately.

Element 1: The Making and Existence of a Valid and Enforceable Contract. Chase pleads the making of a contract with Acme in or about December, 1987. Chase refers to the existence of this contract throughout its petition. Although Chase does not emphasize that the contract was "valid and enforceable," such contention is readily inferable from the other allegations relating to the Chase–Acme relationship.

Element 2: The Right of Plaintiff and Obligation of Defendant. Chase sufficiently pleads the right of Chase and the obligation of Acme under the contract. Chase states that pursuant to the contract, it had a right to the cost of its performance plus a fixed fee of $18,074, with a guaranteed maximum price to Acme of $150,831. Chase contends that Acme agreed and is thus obligated to pay the same.

Element 3: A Violation By Defendant. Chase amply alleges Acme's breach. Chase outlines the following four instances of breach. First, Acme began full production work at its plant on February 1, 1988. Second, Acme employed all three shifts of plant workers for lead plate manufacturing, along with related wet charge activities. Third, Acme employed the third shift of pasting process, which left water standing in the pasting area for up to one hour at the start of the electricians' work day. Fourth, Acme engaged a non-union contractor, over Chase's objections and during the period when Chase was on the site, despite the fact that Acme knew Chase was a union contractor.

Element 4: Damages Resulting to Plaintiff from the Breach. Chase sufficiently pleads that it suffered damages as a result of the breach. Chase asserts that the breaches unduly delayed, disrupted, hindered and interfered with its performance of its work, causing Chase to perform its work out of sequence and under awkward, overcrowded, disruptive, piecemeal and hazardous conditions. Chase further asserts that the reasonable value of its work, labor and materials under the actual conditions totaled $217,037.17. Therefore, Chase seeks as damages the difference be-

tween the actual cost and sum Acme in fact paid.

 Curiously, Acme does not contest whether Chase sufficiently pleads the elements for a cause of action for damages. Instead, Acme argues that even if Chase's allegation of breach of a parol agreement were true, Chase would not be entitled to relief as a matter of law. Acme supports this assertion with the following rules. First, when parties enter into an agreement and reduce their agreement to writing, the instrument is presumed to represent their entire agreement unless the writing indicates otherwise. Citing *Conservative Federal Savings & L. Ass'n v. Warnecke*, 324 S.W.2d 471, 478 (Mo.App.1959). Second, absent fraud, accident or mistake, all prior negotiations and conversations between the parties have merged in the written agreement executed by such parties where it appears that the written instrument is full and complete on its face. Citing *Sol Abrahams & Son Const. Co. v. Osterholm*, 136 S.W.2d 86, 92 (Mo.App.1940).

 The flaw in Acme's argument is that none of the written documents executed by either Chase or Acme appear to be a full and complete integration of the parties' agreements. Furthermore, as we previously stated, allowing Chase's pleadings their broadest intendment, Chase's contract with Acme contains both written and oral terms. Where a contract contains both written and oral terms, the actual terms of the contract are for the jury to determine. *Marden v. Radford*, 229 Mo. App. 789, 84 S.W.2d 947, 954 (1935). We therefore decline to determine the actual constitution of Chase's and Acme's agreement. Dismissal on the pleadings was improper.

Chase's allegations are sufficient to withstand a motion to dismiss because the basic elements of a cause of action are stated. We therefore reverse Count I and remand it for further proceedings consistent with this opinion.

## Count II

 Chase additionally contends that it sufficiently pleads a cause of action for recovery in quantum meruit. Quantum meruit is based on a promise implied by the law that a person will pay a reasonable and just compensation for valuable services or materials provided at the person's request or with his approval. *McDowell v. Schuette*, 610 S.W.2d 29, 37 (Mo.App.1980). Where a contractor has fully or substantially performed a contract, he may elect to sue either on the contract or in quantum meruit. *Kranz v. Centropolis Crusher, Inc.*, 630 S.W.2d 140, 145 (Mo.App.1982). If he elects the latter he must plead: (1) that it provided to defendant materials or services at the request or with the acquiescence of defendant; (2) that those materials or services had a certain reasonable value; and (3) that defendant, despite demands of plaintiff, has failed and refused to pay the reasonable value of those materials and labor. *Berra v. Papin Builders, Inc.*, 706 S.W.2d 70, 73 (Mo.App.1986).

 Chase adequately pleads each of these elements. Chase's petition states that from December 1, 1987 through March 25, 1988, Chase performed valuable services and supplied valuable material and labor at the special instance and request of Acme. Chase's petition additionally states that Chase's services, material and labor have a fair and reasonable value of $217,037.71. Finally, Chase asserts that although Acme paid $168,193.61 for Chase's work, it failed and refused to pay Chase the $48,844.10 balance due and owing to Chase, despite demand for payment of the same.

Interestingly, Acme again does not contest whether Chase adequately pleads a cause of action for recovery in quantum meruit. Instead, Acme argues that even if Chase's allegations were true, recovery could not exceed the contract price as a matter of law. Since Acme's allegation addresses the merits of Chase's quantum meruit claim, we decline to address the argument. Chase adequately pled the basic elements of the cause of action, and by so doing, Chase's petition should have withstood a motion to dismiss. We therefore

remand Count II for further proceedings consistent with this opinion.

█ Before we address Count III, we note that Acme argues on appeal that even if Chase's allegation of breach of the implied covenant not to hinder or delay performance were true, Chase's completion of the contract constitutes a waiver of strict performance and, therefore, Chase is not entitled to relief as a matter of law. Acme's claim must fail for two reasons. First, affirmative defenses must be pleaded. Rule 55.01. Waiver is an affirmative defense. Rule 55.08. Since Acme failed to raise the issue of waiver in its pleadings, it may not argue waiver on appeal. Second, whether a waiver is to be implied from the acts or conduct of a party is a question of fact. 17A C.J.S. Contracts Section 630(c). Dismissal on the pleadings is incorrect where a material issue of fact exists. *Madison Block Pharmacy v. U.S. Fidelity*, 620 S.W.2d 343, 345 (Mo. banc 1981). Therefore, even if Acme properly pled waiver as an affirmative defense, dismissal on the pleadings would have been improper.

### Count III

█ Finally, Chase asserts that it sufficiently states a cause of action for misrepresentation, or fraud, against Acme. We agree. The elements of fraud are: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity, or his ignorance of its truth; 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation being true; 8) his right to rely thereon; and, 9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988).

Chase sufficiently pleads each of these elements. First, as we have previously indicated, Chase attributes three representations to Acme: 1) that Acme would not begin full production at its plant until March 1, 1988; 2) that up until March 1, 1988, the only production work at the plant would be by the third shift of lead plate manufacturing; and 3) that no production work of any kind would take place during the times that Chase would be working. Second, Chase asserts that these representations were false. Third, Chase states these representations were material to the contract between Chase and Acme. Fourth, Chase pleads Acme knew these representations were false or alternatively, Acme recklessly and negligently made these representations to Chase without knowledge of their truth or falsity. Fifth, Chase claims these representations were intended to induce Chase to enter into the contract with Acme. Sixth, Chase states that it was ignorant of the falsity of these representations until or about February 1, 1988. Seventh, Chase asserts it reasonably relied on these representations. Eighth, Chase states it reasonably and rightfully relied on these representations. Finally, Chase pleads these representations were the consequential and proximate cause of, or directly resulted in, damages to Chase. We therefore conclude the trial court erred in dismissing Count III of Chase's petition.

For the reasons stated, judgment of the trial court dismissing Counts I, II and III is reversed, and the cause remanded for proceedings consistent with this opinion.

REINHARD, P.J., and CRANE, J., concur.